IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Civil Action No. 2:24-cv-1596

UNITED STATES OF AMERICA
and
COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

        Plaintiffs,

  v.

HILCORP ENERGY COMPANY,

        Defendant.

## COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the United States and acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Commonwealth of Pennsylvania, Department of Environmental Protection ("PADEP") (collectively "Plaintiffs") allege:

### NATURE OF ACTION

1. This is a civil action against Hilcorp Energy Company ("Hilcorp" or "Defendant") pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b), and Section 4(1), (10) of the Pennsylvania Air Pollution Control Act of January 8, 1960, P.L. 2119 (1959), *as amended*, 35 P.S. § 4004(1), (10) (the "Pennsylvania APCA").

2. Plaintiffs seek injunctive relief and civil penalties for violations of the Act, the Pennsylvania APCA, and Pennsylvania's Federally approved State Implementation Plan ("SIP"), which resulted in unlawful emissions of volatile organic compounds ("VOC") and other air pollutants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331 (Federal Question), 1345 (United States as Plaintiff), and 1355 (Fine, Penalty, or Forfeiture).

4. This Court has supplemental jurisdiction over the state law claims asserted by PADEP pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations that are the basis of this Complaint occurred in this District and the facilities at issue are operated by Hilcorp in this District.

## NOTICES

6. Notice has been given to Hilcorp and the appropriate air pollution control agency in the Commonwealth of Pennsylvania in accordance with Section 113 of the Act, 42 U.S.C. § 7413.

## DEFENDANT

7. Hilcorp is an oil and natural gas exploration and production company incorporated and headquartered in the State of Texas and registered to do business in Pennsylvania.

8. Hilcorp owns and operates central processing facilities and wells in the Appalachian Basin in western Pennsylvania that extract condensate (a type of oil) and natural gas from the Marcellus and Utica shale formations.

9. Hilcorp is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Air Act

10. The Clean Air Act establishes a regulatory scheme to protect and enhance the quality of the nation's air to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

### Pennsylvania SIP

11. Pursuant to Sections 108 and 109 of the Act, 42 U.S.C. §§ 7408 and 7409, EPA must establish air quality criteria for air pollutants that "may reasonably be anticipated to endanger public health or welfare," known as "National Ambient Air Quality Standards" ("NAAQS").

12. Ground-level ozone, commonly known as "smog," is one of the criteria pollutants for which EPA has established NAAQS. Ground-level ozone is formed by chemical reactions between VOCs and oxides of nitrogen in the presence of heat and sunlight.

13. Pursuant to Section 110(a) of the Act, 42 U.S.C. § 7410(a), each state must adopt and submit to EPA for approval a plan that provides for the implementation, maintenance, and enforcement of the NAAQS. This plan is known as a state implementation plan or "SIP." Section 110(a)(2)(A) of the Act, 42 U.S.C. § 7410(a)(2)(A), requires that each SIP include enforceable emissions limitations and other "control measures, means, or techniques" to ensure attainment of

the NAAQS. After enforceable state emission limitations are approved by EPA, these SIP provisions are federally enforceable under Section 113 of the Act, 42 U.S.C. § 7413.

14. Pennsylvania's federally approved SIP regulations are identified in 40 C.F.R. § 52.2020(c).

15. The PA SIP provisions governing Hilcorp's facilities are codified in 25 Pa. Code Chapter 127. In relevant part, the PA SIP requires PADEP approval of the construction of any air contamination source and requires such sources to be operated in accordance with the specifications included in the application for such approval and any conditions issued by PADEP. 25 Pa. Code §§ 127.11, 127.25. In addition, the PA SIP prohibits operation without a permit to operate issued by PADEP and requires such operation to be in accordance with the application and the terms of the approval or permit issued by PADEP. 25 Pa. Code §§ 127.402(a), 443(a), 444.

16. The PA SIP further provides that PADEP may issue a general approval or permit for any category of stationary air contamination sources if PADEP determines that sources in the category are similar and can be adequately regulated using standardized specifications and conditions. 25 Pa. Code § 127.611. A source operating under such a general approval or permit must comply with the terms and conditions established thereunder. 25 Pa. Code §§ 127.622(a).

17. PADEP has issued such a general permit for certain natural gas, compression, and processing facilities, which is known as a "GP-5 Permit." The GP-5 Permit requires compliance with the specifications included in the application for the GP-5 Permit as well as the terms and conditions of the GP-5 Permit. Among other conditions, the GP-5 Permit requires compliance with performance standards established by EPA for crude oil and natural gas production facilities as specified in 40 C.F.R. Part 60, Subpart OOOO. These standards apply to specified facilities

(referred to as "affected facilities"), including storage vessels, that are, in the case of NSPS OOOO, constructed or modified after August 23, 2011 and on or before September 18, 2015, or, in the case of NSPS OOOOa, constructed or modified after September 18, 2015 and on or before December 6, 2022. 40 C.F.R. §§ 60.5360-5430, 5360a-5432a.

## FACTUAL BACKGROUND

### A.    Marcellus and Utica Formations

18.    The Marcellus and Utica shale formations are rock formations within the Appalachian Basin that underlie large portions of Pennsylvania, Ohio, and West Virginia. The Marcellus formation lies at various depths from the surface to approximately 8,000 feet. The Utica formation is located below the Marcellus formation. In Pennsylvania, the Marcellus and Utica formations contain trillions of cubic feet of natural gas and millions of barrels of natural gas liquids, known as "condensate."

### B.    Hilcorp Facilities

19.    Hilcorp is one of many companies that extract natural gas and condensate from the Marcellus and Utica shale formations via extraction wells.

20.    The surface site from which a well is drilled is known as a well pad. Hilcorp owns and operates numerous wells in western Pennsylvania that produce a mixture of condensate, natural gas, and produced water.

21.    Hilcorp owns and operate central processing facilities that receive the condensate, natural gas, and produced water from surrounding well pads. The natural gas is pressurized and sent offsite via a sales line, while at most of the facilities the condensate and process water are separated out and stored onsite in above ground storage tanks. At one facility (Mahoning-

Buckner), only produced water is sent to storage tanks, with the oil and gas remaining in the pipeline.

22. The storage tanks are kept near atmospheric pressure and hence are often referred to as atmospheric storage tanks.

23. When pressurized condensate and produced water is transferred into an atmospheric storage tank, the pressure drops quickly. This causes some of the hydrocarbons in the condensate, including VOCs, Hazardous Air Pollutants ("HAP"), and methane, to vaporize in a phenomenon known as "flashing." After flashing occurs, the condensate and produced water (which still contains some condensate, even after initial separation) continue to emit vapors due to liquid level changes and temperature fluctuations.

24. Hilcorp is required to capture and control the vapors from its storage tanks. Hilcorp does this by routing the vapors through a series of pipes or vent lines to a combustion device or a vapor recovery unit.

25. The term "vapor control system" is used herein to refer to the vent lines from a storage tank or group of connected storage tanks to a combustion device or Vapor Recovery Unit, and all connections, fittings, pressure relief devices (including thief hatches on the storage tanks), and any other appurtenance used to contain and collect storage tank vapors, and to transport or convey the vapors to a control device or vapor recovery unit.

C. **Storage Tank Thief Hatches**

26. The tops of storage tanks have openings called "thief hatches." Thief hatches are equipped with gaskets that are supposed to seal tight when closed.

27. Thief hatches serve two primary purposes. First, they provide access to the contents of a storage tank for taking samples and measuring the liquid level in the tank (known

as "gauging"). Second, they provide a means of (a) relieving pressure from a storage tank to prevent over pressurization and (b) eliminating excessive vacuum.

28. To prevent over pressurization, thief hatches are designed to open (i.e. vent) when the pressure inside the tank exceeds the pressure setting of the thief hatch.

29. Hilcorp uses "spring loaded" thief hatches. The pressure setting is determined by the stiffness of the pressure spring.

30. When the pressure inside a storage tank approaches the pressure setting of the thief hatch, the spring begins to compress, causing the thief hatch to open. When the pressure drops below the pressure setting, the spring expands causing the thief hatch to close.

### D. EPA and PADEP Investigation

31. In October 2018, EPA and PA DEP inspected eight facilities at which Hilcorp conducts oil and natural gas production operations in the Appalachian Basin in Pennsylvania. Using an optical gas-imaging infra-red camera ("IR camera") and a photoionization detector, EPA and PA DEP inspectors observed VOC emissions emanating from the storage vessel and closed vent system pressure relief devices at six of the facilities (North Beaver NCD, Shenango-Radkowski, Mahoning-Siegel, Pulaski-Carlisle, Lackawannock-Larmon, and Mahoning-Buckner).

32. The first five facilities (North Beaver NCD, Shenango-Radkowski, Mahoning-Siegel, Pulaski-Carlisle, and Lackawannock-Larmon) were operated by Hilcorp pursuant to a GP-5 permit. In its GP-5 permit applications for these five facilities, Hilcorp represented that 100 percent of VOC emissions from storage tanks at each facility was captured and routed to a control device.

33. The sixth facility (Mahoning-Buckner) lacked a GP-5 permit. Hilcorp purported to be operating the facility pursuant to an exemption from the GP-5 requirement, which required operation of an enclosed combustion device to control vapors from the storage tanks. However, EPA and PA DEP inspectors observed that Hilcorp used an open flare at this facility, rather than an enclosed combustion device. As a result, the facility does not qualify for exemption from the Pennsylvania SIP's plan approval and permitting requirements and, therefore, Hilcorp is operating its Mahoning-Buckner facility without a required plan approval or permit authorization.

34. These six facilities at which VOC emissions were observed are identified in Table A, below.

**Table A. Hilcorp Facilities at Which Emissions Were Observed**

| Facility Name | Latitude | Longitude | County | GP-5 Permit |
|---|---|---|---|---|
| North Beaver NCD | 40.990192 | -80.431974 | Lawrence | Yes |
| Shenango-Radkowski | 41.139656 | -80.432744 | Mercer | Yes |
| Mahoning-Siegel | 41.0518 | -80.47311 | Lawrence | Yes |
| Pulaski-Carlisle | 41.11214 | -80.46115 | Lawrence | Yes |
| Lackawannock-Larmon | 41.2032 | -80.347492 | Mercer | Yes |
| Mahoning-Buckner | 41.030837 | -80.447462 | Lawrence | No |

35. Further investigation indicated that Hilcorp had failed to ensure that each of its vapor control systems was adequately designed and sized to route all storage tank vapors to an emissions control device.

## GENERAL ALLEGATIONS

36. At all times relevant to the Complaint, Hilcorp conducted oil and natural gas production operations in the Appalachian Basin in Pennsylvania.

37. At all times relevant to the Complaint, Hilcorp owned and/or operated the facilities identified in Table A, above.

## FIRST CLAIM FOR RELIEF
(GP-5 Violations)

38. Paragraphs 1 through 37 are incorporated herein by reference.

39. Hilcorp's North Beaver NCD, Shenango-Radkowski, Mahoning-Siegel, Pulaski-Carlisle, and Lackawannock-Larmon facilities are air contamination sources subject to plan approval requirements set forth in the PA SIP at 25 Pa. Code Chapter 127.

40. Hilcorp failed to comply with the specifications in its GP-5 applications and the terms and conditions of its GP-5 permits at the North Beaver NCD, Shenango-Radkowski, Mahoning-Siegel, Pulaski-Carlisle, and Lackawannock-Larmon facilities, because it failed to capture and route to a control device 100 percent of VOC emissions from the storage tanks at each of these facilities.

41. Hilcorp's failure to comply with GP-5 requirements at these facilities is a violation of federally approved SIP provisions set forth at 25 Pa. Code §§ 127.25, 127.444, and 127.622(a).

42. Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Hilcorp is liable for injunctive relief and civil penalties up to the statutory maximum per day for each violation. *See* 88 Fed. Reg. 89,309, 89,312 (Dec. 27, 2023).

## SECOND CLAIM FOR RELIEF
(Failure to Obtain GP-5 Permit at Mahoning-Buckner)

43. Paragraphs 1 through 37 are incorporated herein by reference.

44. Hilcorp's Mahoning-Buckner facility is an air contamination source subject to plan approval requirements set forth in the PA SIP at 25 Pa. Code Chapter 127.

45. Hilcorp failed to obtain a plan approval or GP-5 permit authorization for Mahoning-Buckner in violation of federally approved SIP provisions set forth at 25 Pa. Code §§ 127.402(a) and 127.443.

46. Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), Hilcorp is liable for injunctive relief and civil penalties up to the statutory maximum per day for each violation. *See* 88 Fed. Reg. 89,309, 89,312 (Dec. 27, 2023).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A. Permanently enjoin Defendant from further violating the Act, the Pennsylvania APCA, the PA SIP, and applicable GP-5 permits;

B. Order Defendant to take appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by such violations;

C. Assess a civil penalty against Defendant for each violation up to the statutory maximum per day for each violation;

D. Award Plaintiffs their costs of this action; and

E. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


/s *Jason A. Dunn*
Jason A. Dunn
Assistant Section Chief
U.S. Department of Justice
Environmental Enforcement Section
Environment and Natural Resources Division
PO Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Phone: (202) 514-1111
Fax: (202) 514-8865
Email: Jason.Dunn@usdoj.gov


ERIC G. OLSHAN
United States Attorney
Western District of Pennsylvania


PAUL SKIRTICH, Bar No. 30440
Assistant United States Attorney
U.S. Post Office and Courthouse
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
Phone: (412) 894-7418
Fax: (412) 644-6995
Email: Paul.Skirtich@usdoj.gov


OF COUNSEL:

ROBERT KLEPP
KRISTIN TERRY
Attorneys
Air Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency

A.J. D'ANGELO
Senior Assistant Regional Counsel
Office of Regional Counsel, Air & Toxics Branch
U.S. Environmental Protection Agency

        COMMONWEALTH OF PENNSYLVANIA,
        DEPARTMENT OF ENVIRONMENTAL
        PROTECTION

        /s *Carl D. Ballard*
        (Signed by Filing Attorney with consent)
        Carl D. Ballard, Bar No. PA320830
        Assistant Counsel
        Northwest Regional Counsel
        230 Chestnut Street
        Meadville, PA  16335-3407
        Phone: 814-332-6070
        Fax: 814-332-6996
        Email: caballard@pa.gov